Amy A. Lombardo, ISB No. 8646
Alexandra L. Hodson, ISB No. 10631
PARSONS BEHLE & LATIMER
800 W. Main Street, Suite 1300
Boise, ID  83702
Telephone: (208) 562-4900
Facsimile: (208) 562-4901
Email:  ALombardo@parsonsbehle.com
        AHodson@parsonsbehle.com

Attorneys for Plaintiffs

### UNITED STATES DISTRICT COURT
### DISTRICT OF IDAHO

| | |
|---|---|
| DENA MORENO, an individual; ROBERT THOMAS, an individual, and NICHOLAS JONES FOR CONGRESS,<br><br>Plaintiffs,<br><br>v.<br><br>IDAHO SECRETARY OF STATE; and LAWERENCE DENNEY, in his official capacity as Secretary of State,<br><br>Defendants. | Case No. 1:20-cv-00242-BLW<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' PETITION/MOTION FOR TRO AND EMERGENCY PRELIMINARY INJUNCTION** |

Per the Court's request, Plaintiffs submit this supplemental brief in support of their petition/motion for a TRO and an emergency preliminary injunction requiring Defendants to take all action necessary to extend the May 19, 2020 ballot request deadline in Idaho for 7 days, and to take all action necessary to provide notice to the public of the extension. Defendants' refusal to extend the deadline—notwithstanding the inability of many Idahoans to request a ballot because Defendants' own online ballot request website malfunctioned and then crashed in the final days—violates the fundamental right to vote under the First and Fourteenth Amendments to the United States Constitution and Idaho Constitution Art. 1 §§ 1, 2, 19.

# INTRODUCTION

Absent relief from this Court, many eligible prospective voters who attempted to obtain an absentee ballot within the time that Idaho law permits, but were prevented from doing so by Defendants' broken website, will be disenfranchised in this Primary election, in violation of the First and Fourteenth Amendments to the United States Constitution and Idaho Constitution Art. 1 §§ 1, 2, 19. This Court should grant a preliminary injunction requiring Defendants to reopen and extend the deadline, and to notify the public of the reopening and extension, so that Idahoans can request an absentee ballot to vote.

# STATEMENT OF FACTS

In the critical run-up to the absentee ballot request deadline, Defendants' website broke, causing Idahoans to experience delays or outright inability to request an absentee ballot online. As the number of visitors to the site increased, problems with the site became more and more common, culminating in the site crashing during the final days leading up to and including the May 19 deadline to request a ballot. That afternoon, visitors to the site began receiving a "file not found" error message.

Defendants were aware that the number of visitors to the site was increasing within the final days of the ballot request deadline, and that voters were having problems with the site; nonetheless, up until the May 19 deadline, they continued to encourage voters to use the online ballot request tool.

For all practical purposes, absentee ballot request opportunities were unavailable to many Idahoans in the days leading up to and including the deadline to request a ballot.

**ARGUMENT**

This is an action pursuant to 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United State Constitution, and Idaho Constitution Art. 1 §§ 1, 2, 19.

A preliminary injunction is appropriate here because, absent an extension, voters in Idaho will suffer irreparable harm. To obtain a preliminary injunction, a plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Particularly in light of the fundamental constitutional rights at stake, these requirements are easily satisfied here.

### I.  Plaintiffs Are Likely To Prevail on the Merits

#### A.  Defendants' Actions Severely Burden the Right to Vote Without Advancing any State Interest

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). State election laws that burden the fundamental right to vote are subject to searching scrutiny. As the Supreme Court explained in *Burdick v. Takushi*, "[a] court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780 (1983)). When the restriction on the right to vote is "severe," the restriction "must be narrowly drawn to advance

a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 289 (1992). But "[h]owever slight [the] burden may appear, . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (plurality) (quoting *Norman*, 502 U.S. at 288–89).

If the May 19 ballot request deadline is not extended, hundreds of Idahoans will be disenfranchised entirely. These individuals attempted to request a ballot during the period provided by Idaho law, in reliance on assurances from Defendants that the online request system would be available until 8 PM on May 19, but are now disenfranchised. "[T]he basic truth [is] that even one disenfranchised voter . . . is too many[.]" *League of Women Voters of N.C. v. N. Carolina* ("*LOWV of N.C.*"), 769 F.3d 224, 244 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015). Laws precluding citizens from voting entirely impose a severe burden on the right to vote, and courts routinely so hold. *Stewart v. Blackwell*, 444 F.3d 843 (6th Cir. 2006); *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 709 (N.D. Ohio 2006); *Northeastern Ohio Coalition for the Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012); *One Wisconsin Institute, Inc. v. Thomsen*, No. 15-cv-324, 2016 WL 4059222 (W.D. Wis. July 29, 2016); *Ayers-Schaffner v. DiStefano*, 860 F. Supp. 918, 921 (D.R.I.), *aff'd*, 37 F.3d 726 (1st Cir. 1994).

Recognizing this principle, other courts have issued a preliminary injunction extending the deadline to allow people an opportunity to vote. *See New Virginia Majority Education Fund v. Virginia Department of Elections*, No. 1:16-cv-1319 (E.D. Va. Oct. 20, 2016) (granting extension to deadline to register to vote due to website crash in days leading up to and including deadline to register); *Fla. Dem. Party v. Scott*, No. 16-cv-626, Doc. 29 at 2 (N.D. Fla. Oct. 12, 2016) (granting extension to deadline to register to vote due to hurricane); *Georgia Coalition for The Peoples' Agenda, Inc. et al. v. Deal*, No. 16-cv-219, Doc. 16 at 1 (N.D. Ga. Oct. 14, 2016) (same). These

4

courts explained that the states' original deadline disenfranchised voters who were unable to vote through no fault of their own. Further, as the court stated in *Fla. Dem. Party v. Scott*, Florida's refusal to extend its deadline voluntarily was a "severe burden that is subject to strict scrutiny" and was unconstitutional. No. 16-cv-626, Doc. 15 at 10–11 (N.D. Fla. Oct. 10, 2016). But even if less searching scrutiny applied, the court explained, Florida's refusal to extend registration "still would be unconstitutional" in light of the lack of any legitimate state interest and the "at best de minimis" burden of "extending voter registration." *Id.* at 11.

The same is true here. Nothing justifies Defendants' refusal to extend the May 19 absentee ballot request deadline. To date, Defendants have offered no justification for not extending the deadline. The State has advanced no interest "sufficiently weighty" to justify even a "slight" burden on the right to vote, *Crawford*, 553 U.S. at 191, much less an interest of "compelling importance" that could justify the severe burdens at issue here, *Norman*, 502 U.S. at 289. Even if Defendants were to argue that their interest is public safety and that the issues with the website only placed a slight burden on the right to vote because there were other means of requesting an absentee ballot, they repeatedly encouraged voters to use the website up to and including the day of the deadline, despite known problems with it. In addition, refusing to extend the absentee ballot deadline does nothing to further public safety.

Moreover, while the other methods of requesting a ballot may have included driving a request form to the county clerk's office, or printing, signing, scanning, and emailing a request form to the county clerk, those methods were insufficient for individuals who relied on the website because they were unwilling or unable to leave their home due to COVID-19 or other reasons, and for those who did not have access to a printer or scanner. The slow-downs and crashes that prevented Idahoans from requesting an absentee ballot are problems of Defendants' own making,

and Defendants can have no legitimate interest in forcing Idaho citizens to pay the price—especially a price so great as complete disenfranchisement—for Defendants' error.

Plaintiffs are accordingly likely to prevail on the merits of their claim that Defendants' action violates the fundamental constitutional right to vote.

### B. Defendants' Actions Violate the Equal Protection Clause

Defendants' actions violate the Equal Protection Clause by arbitrarily favoring Idaho citizens who attempted to request an absentee ballot before May 19 over those who attempted to request a ballot on the days leading up to and including May 19. Both sets of Idahoans are similarly situated for all material purposes here—both attempted to request a ballot within the timeline that was established by Idaho law and in a manner Idaho law permits. Yet, through no fault of their own, many voters who tried to obtain a ballot were unable to do so, either due to significant delays in website responsiveness or complete website failure. Thus, refusing to extend the May 19 deadline would arbitrarily distinguish between these two sets of similarly situated voters.

Such arbitrary distinctions violate the Equal Protection Clause. As the Supreme Court has held: "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104–05 (2000); *see also Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) ("[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction."); *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 477 (6th Cir. 2008) ("*LOMV of Ohio*"). "At a minimum," the Supreme Court has held, "equal protection requires 'nonarbitrary treatment of voters.'" *LOMV of Ohio*, 548 F.3d at 477 (quoting *Bush*, 531 U.S. at 105).

6

Thus, for example, the Sixth Circuit held that it would violate the Equal Protection Clause to force voters to "wait from two to twelve hours to vote" because "[v]oting machines were not allocated proportionately to the voting population, causing more severe wait times in some counties than in others." *Id.* at 477–78. "Long wait times caused some voters to leave their polling places without voting in order to attend school, work, or to family responsibilities or because a physical disability prevented them from standing in line." *Id.* at 478. Such allegations "could establish that Ohio's voting system deprives its citizens of the right to vote or severely burdens the exercise of that right depending on where they live in violation of the Equal Protection Clause." *Id.*

It is equally arbitrary—and equally a violation of the Equal Protection Clause—to deprive citizens of the right to vote depending on the day that they chose to request a ballot within the designated timeframe to do so. Like a voter's choice to live in a particular county, a voter's choice to request a ballot on a particular day within the period established by state law manifestly is not a rational basis for distinguishing among voters. In short, after granting the right to vote "on equal terms" to all those who sought to request a ballot online through May 19, Defendants have now arbitrarily denied the right to vote to some of those individuals based on nothing more than the happenstance of the day they picked to request a ballot. *Bush*, 531 U.S. 104. The State, by "later arbitrary and disparate treatment," has not simply "value[d] one person's vote over that of another," *id.* at 1044–105, but deprived one group's vote of any value whatsoever.

Thus, Plaintiffs are likely to prevail on the merits of their Equal Protection Clause challenge.

### C. Defendants' Actions Violate the Due Process Clause

Refusing to extend the ballot request deadline would also violate the Due Process Clause. "The Due Process Clause is implicated, and § 1983 relief is appropriate, in the exceptional case

7

where a state's voting system is fundamentally unfair." *LOMV of Ohio*, 548 F.3d at 478; *accord Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978) ("[D]ue process is implicated where the entire election process including as part thereof the state's administrative and judicial corrective process fails on its face to afford fundamental fairness."). Thus, for example, the First Circuit found a Due Process violation where "the Secretary of State, statutorily authorized manager of state elections, advertised, issued, and sanctioned the use of certain ballots which the Rhode Island Supreme Court quashed after the results of the election were in." *Griffin*, 570 F.2d at 1078–79; *see Roe v. State of Ala. By & Through Evans*, 43 F.3d 574, 581 (11th Cir. 1995) (Due Process Clause implicated when the state of Alabama attempted to retroactively change the rules for counting absentee ballots after the election had already taken place).

It is hard to imagine a more "fundamentally unfair" voting practice than announcing that citizens could request an absentee ballot online through May 19, denying them the ability to do so, and then refusing to extend the ballot request period to accommodate citizens who relied to their detriment on the state's promises. Needless to say, by the time prospective Idaho voters realized that the delays and website failures meant that they would be unable to request a ballot on May 19, it was too late for those prospective voters to go back in time and request a ballot before the website broke. Accordingly, Plaintiffs are likely to succeed on the merits of their due process claim.[1]

---

[1] Plaintiff Nicholas Jones for Congress has Article III standing because it was forced to expend resources on absentee ballot request efforts as a consequence of Defendants' broken website. "[O]rganizations are entitled to sue on their own behalf for injuries they have sustained." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982) (citing *Warth v.Seldin*, 422 U.S. 490, 511 (1975)); *see also id.* at 379 (holding that "concrete and demonstrable injury to [an] organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests" and confers standing on the organization in its own right); *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) ("Because it will divert resources from its regular activities to educate voters about the requirement of a photo identification and assist voters in obtaining free identification cards, the NAACP established an injury sufficient to confer standing to challenge the statute.").

**D. Plaintiffs are entitled to relief under 42 U.S.C. § 1983**

42 U.S.C. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" To obtain injunctive relief under § 1983, plaintiffs must "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

State officials sued in their official capacity for injunctive relief are persons for purposes of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1371 (9th Cir. 1992). Employees of the state act under color of state law when acting in their official capacity. *See West v. Atkins*, 487 U.S. 42, 49 (1988); *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006); *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000); *Vang v. Xiong*, 944 F.2d 476, 479 (9th Cir. 1991).

Secretary of State Lawerence Denney acted in his official capacity and under color of state law in encouraging Idaho voters to use the SOS website to request an absentee ballot through the May 19 deadline. He also acted in his official capacity in refusing to extend the absentee ballot request deadline, despite knowing of significant problems with the website in the days and weeks leading up to the deadline. These actions have deprived Idaho voters of their constitutional right to vote in the 2020 Primary election. As a result, injunctive relief is appropriate here under 42 U.S.C. § 1983.

## II.     An Injunction Is Necessary To Prevent Irreparable Harm

The violation of a citizen's right to vote is the quintessential irreparable injury justifying an injunction. "By finding an abridgement to the voters' constitutional right to vote, irreparable harm is presumed and no further showing of injury need be made." *Touchston v. McDermott*, 234 F.3d 1133, 1158–59 (11th Cir. 2000); *see also Obama for Am. v. Husted* ("*OFA*"), 697 F.3d 423, 436 (6th Cir. 2012); *Council of Alt. Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986). Absent relief here, hundreds, if not thousands, of Idahoans will be disenfranchised as a result of Defendants' refusal to extend the absentee ballot request deadline after the online tool malfunctioned and then crashed in the days leading up to and including the deadline. Plaintiffs Dena Moreno and Robert Thomas are among these Idahoans facing imminent disenfranchisement. Absent an extension of the ballot request deadline, they will not be able to vote in this Primary election. In these circumstances, Defendants cannot plausibly contest irreparable harm.

## III.    The Balance of Equities Weighs in Favor of an Injunction

The balance of equities weighs heavily in favor of an injunction. Beyond perhaps some minor administrative inconvenience, Defendants will face no legitimate burden if they are required to continue accepting absentee ballot requests for an additional 4 days after this Court rules. Indeed, Defendants are currently continuing to process mailed ballot requests beyond the May 19 deadline if they were postmarked on May19.

On the other side of the ledger, if the ballot request deadline is not extended, many voters, including the individual Plaintiffs here, will be disenfranchised entirely. Under these circumstances, the equities strongly favor Plaintiffs. *See Taylor v. Louisiana*, 419 U.S. 522, 535 (1975) ("administrative convenience" cannot justify the deprivation of a constitutional right).

Events in other states confirm this view of the equities. For instance, South Carolina voluntarily extended its registration deadline, including its online registration deadline, to accommodate South Carolinians affected by Hurricane Matthew in 2016. Avery Wilks, *S.C. Voter Registration Deadline Extended Due to Hurricane*, The State, Oct. 6, 2016, http://www.thestate.com/news/politics-government/article106483332.html. Courts in Georgia and Florida ordered those states likewise to extend their registration deadlines after the storm, and each state did so. *See supra*, at pp.4–5. There is no legitimate reason why Idaho cannot and should not extend its deadline here, particularly when the obstacle to requesting a ballot was of Defendants' own making.

## IV. An Injunction Is in the Public Interest

The public has a paramount interest in ensuring that every eligible citizen is able to vote. "[T]he public has a "strong interest in exercising the fundamental political right to vote.'" *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)); *see also LOWV of N.C.*, 769 F.3d at 248. Many Idahoans attempted to request an absentee ballot in a timely manner using Defendants' online tool, but were prevented from obtaining a ballot through no fault of the their own. Defendants' website simply could not handle the volume of traffic. In these circumstances, an injunction giving Idahoans an opportunity to participate in the Primary election would manifestly promote the public interest.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Petition/Motion for TRO and emergency preliminary injunction requiring Defendants to take all action necessary to reopen and extend the May 19, 2020 absentee ballot request deadline in Idaho until May 26, 2020, and to take all action necessary to provide notice to the public of the reopening and extension.

DATED THIS 22nd day of May, 2020.

                              PARSONS BEHLE & LATIMER


                              By: */s/ Amy A. Lombardo*
                                   Amy A. Lombardo
                                   Attorney for Plaintiff,
                                   Nicholas Jones for Congress

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22 day of May, 2020, a true and correct copy of the within and foregoing instrument was served upon:

| | |
|---|---|
| Robert Berry<br>Office of the Attorney General<br>954 W. Jefferson Street, 2nd Floor<br>Boise, ID 83702<br>*Attorney for Defendants* | ☐ U.S. Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Delivery<br>☒ Email Robert.Berry@ag.idaho.gov |

*/s/ Amy A. Lombardo*
Amy A. Lombardo